CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 09, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VELLE B. PARKS,<br>    Plaintiff,<br><br>v.<br><br>LEAH HOLBROOK, *et al.*,<br>    Defendants. | Civil Action No. 7:23-cv-00585<br><br>By: Elizabeth K. Dillon<br>     Chief United States District Judge |

**MEMORANDUM OPINION**

Velle B. Parks, a Virginia inmate proceeding *pro se*, filed this action alleging excessive force, deliberate indifference to serious medical needs, and First Amendment and due process violations related to his pursuit of prison grievances. (Compl., Dkt. No. 1.) Plaintiff sued C. Meade and T. Trapp, who move to dismiss for failure to state a claim (Dkt. No. 31), and Nurse Leah Holbrook, who moves for summary judgment (Dkt. No. 37).[1] For the reasons stated below, these motions will be granted.

I. BACKGROUND

**A. Plaintiff's Allegations and Claims**

Parks is currently incarcerated at Wallens Ridge State Prison, but his complaint's allegations describe events occurring when he was housed at Red Onion State Prison (ROSP). Parks alleges that on September 17, 2022, in the wake of a fight that was being broken-up by correctional officers, an officer later identified as Jarrett Slone (ECF No. 11) shot Parks in the face with a 40-millimeter shotgun round. (Compl. 3 of 13.) Plaintiff had a gash on his forehead, his left eye was completely swollen shut, and he was treated for a possible concussion. (*Id.*)

---

[1] The fourth defendant, Jarrett Slone, filed an answer to the complaint. (Dkt. No. 30.)

Parks further alleges that Nurse Holbrook was deliberately indifferent to his medical needs following the shooting. (*Id.* 5.) As noted, Parks was treated for a possible concussion on the day of the shooting. (*Id.*) Two days later, on September 19, 2022, he was given an x-ray following complaints about pain. (*Id.*) He was then taken to a hospital for a CT scan. (*Id.* 6.) On September 23, 2022, Parks visited the prison's eye doctor, who discovered that plaintiff had a piece of plastic shrapnel lodged in his left eye. (*Id.*) The doctor recommended that Parks see an outside specialist. (*Id.*) Parks saw the specialist, named Dr. Harvey, on September 29. (*Id.*) Parks has been diagnosed with traumatic glaucoma. (*Id.* 7.)

Finally, Parks alleges that defendants Meade and Trapp threw away or failed to process his written complaints and grievance forms. (*Id.* 8–11.) He alleges that they violated his First Amendment right to access to the courts and Fourteenth Amendment right to due process through their decisions with respect to his grievances. (*Id.*) He requests one million dollars in both compensatory and punitive damages. (*Id.* 2.)

**B. Nurse Holbrook—Medical Treatment and Records**

Leah Holbrook is a Nurse Practitioner licensed in the Commonwealth of Virginia. She became a NP in 2018 and has been working with adult patients in Virginia since that time. (Ex. A, Holbrook Decl. ¶ 1, Dkt. No. 38-1.) She has worked at ROSP since approximately July 2020. (Holbrook Decl. ¶ 2.)

On September 17, 2022, Parks was evaluated by nursing staff after he was involved in an altercation and hit with a direct impact round to his forehead. (Holbrook Decl. ¶ 6; Ex. B, Medical Records SA0000025, Dkt. No. 38-2.) Parks had a one-inch laceration to the middle of his forehead with swelling noted in his left eye. In addition, he was unable to open his left eye due to swelling. Steristrips and Dermabond were applied to the laceration, and ice was applied

to the left eye. Parks was given Motrin and Tylenol for pain and swelling, neurological checks were ordered every four hours for 12 hours, and Holbrook admitted Parks to the medical unit for close monitoring. (*Id.*) After his evaluation, Parks requested an ice pack for the swelling, and Nurse Holbrook ordered it to be applied three times a day for three days. (Holbrook Decl. ¶ 7; Med. Records SA0000024.)

On September 19, 2022, Holbrook ordered an x-ray which ruled out a facial fracture. (Holbrook Decl. ¶ 8; Med. Records SA0000056, SA0000071.) Nurse Holbrook ordered Parks to be taken to the emergency room at Norton Hospital to assess him for possible head trauma. (Holbrook Decl. ¶ 8; Med. Records 0000022–0000023.) At the emergency room, Parks underwent a CT scan which ruled out acute intracranial abnormality. (Holbrook Decl. ¶ 9; Med. Records SA0000065-0000070.)

Parks saw Nurse Holbrook on September 22, 2022, because of concerns over his left eye being swollen shut and being unable to breathe out of his nose. (Holbrook Decl. ¶ 10; Med. Records SA 0000020.) Parks stated that his sight was blurry in his left eye and he was sensitive to light. Nurse Holbrook noted edema to his upper and lower left eyelids and referred plaintiff to the on-site optometrist for evaluation. (*Id.*)

On September 28, 2022, Nurse Holbrook ordered Tylenol and Motrin for 10 days for Park's discomfort. (Holbrook Decl. ¶ 12; Med. Records SA0000016.) The next day, Parks was evaluated by ophthalmologist Justin Harvey, MD, at Vistar Eye Center. (Holbrook Decl. ¶ 13; Med. Records SA0000044–51.) Dr. Harvey evaluated Parks for trauma to his left eye with complaints of swelling and blurry vision. Dr. Harvey recommended cosopt drops in the left eye twice a day, atropine drops twice a day, prednisone drops four time a day, and a follow-up on October 7, 2022. (*Id.*) Nurse Holbrook ordered the cosopt eye drops to be used twice a day for

30 days. (Holbrook Decl. ¶ 13; Med. Records SA0000015.) This is a medication that lowers eye pressure and treats glaucoma. (*Id.* ¶ 13.) On October 3, 2022, Parks was discharged from the medical unit and told to follow up as needed. (Holbrook Decl. ¶ 14; Med. Records SA0000012.)

Parks had his follow-up appointment with Dr. Harvey on October 7. (Holbrook Decl. ¶ 15; Med. Records SA0000039–43.) His vision was noted to be better but still a little blurry with dull pain when he looked a certain way and headaches. Dr. Harvey recommended discontinuing the atropine drops, continued prednisone and cosopt eye drops twice a day, and a follow-up in 2–3 weeks. (*Id.*) When Parks returned to the facility, Holbrook ordered the medications, discontinued the atropine drops, and scheduled the follow-up. (Holbrook Decl. ¶ 15; Med. Records SA-0000012.)

Parks next saw Dr. Harvey on October 26. (Holbrook Decl. ¶ 16; Med. Records SA0000032–37.) Dr. Harvey recommended Brimonidine three times a day for 180 days, a prednisone taper, and a follow-up in one week. (*Id.*) On October 27, 2022, after Parks returned to ROSP, Nurse Holbrook ordered the recommended medications and directed that his follow up appointment be scheduled. (Holbrook Decl. ¶ 16; Med. Records SA0000011.) Nurse Holbrook also scheduled Parks to see a glaucoma specialist at Vistar Eye Center. (*Id.*)

On November 1, 2022, Parks saw the glaucoma specialist, Frank Cotter, MD, at Vistar. (Holbrook Decl. ¶ 17; Med. Records SA0000027.) Dr. Cotter recommended that Parks use cosopt eye drops twice a day, continue using Brimonidine eye drops three times a day, Lotemax[2] four times a day, and Latanoprost[3] every evening. (Holbrook Decl. ¶ 17; Med. Records

---

[2] Lotemax is a corticosteroid medication used to help treat swelling (edema) and inflammation of the eyes. (Holbrook Decl. ¶ 18; Med. Records SA000009.)

[3] Latanoprost is used to treat high pressure inside the eye due to glaucoma. (Holbrook Decl. ¶ 19; Med. Records 000009.)

4

SA0000028–30.) Follow-up was scheduled for November 14, 2022, but due to transportation issues, it was rescheduled to November 16. (Holbrook Decl. ¶ 16; Med. Records SA0000011.) On November 2, Nurse Holbrook ordered plaintiff's Lotemax eye drops, a 180-day supply, and on November 14, 2022, Nurse Holbrook ordered a 180-day supply of Latanprost, per the recommendations of Dr. Cotter. (Holbrook Decl. ¶¶ 18–19; Med. Records SA000009.)

At Parks's November 16 follow-up appointment, Dr. Cotter noted that plaintiff's traumatic glaucoma was improving, and he recommended Parks continue using his eye medication. (Holbrook Decl. ¶ 20; Med. Records SA0000026.) On November 26, plaintiff was seen by nursing staff at General Sick Call for complaints of headaches since the head injury. Plaintiff was prescribed Tylenol twice a day for five days. (Holbrook Decl. ¶ 21; Med. Records SA000008.)

On January 4, 2023, Parks was transferred from ROSP to Wallens Ridge State Prison. (Holbrook Decl. ¶ 22; Med. Records SA00001–4.)

## C. Parks's Response to Summary Judgment Motion

In response to Nurse Holbrook's motion, plaintiff filed a brief that was notarized and signed under penalty of perjury (Dkt. No. 41), his own separate affidavit (Dkt. No. 43), and two exhibits: an affidavit by ROSP inmate Rashad D. Hillman and a Health Services Complaint and Treatment Form (Dkt. No. 44).

Parks complains that he was forced to wait two days after being shot to be sent to the emergency room, and three more days to see the prison optometrist. (Dkt. No. 41 at 3–4.) He also notes that, on the day he was shot, he was bleeding and there was a "chemical agent" trapped in his eye because he "was unable to open it." (Parks Aff. ¶ 3.) He complains about the pain he endured for five days "under the care of Nurse Leah Holbrook . . . wondering would I

5

ever see out of my eye again." (*Id.*)  Parks claims that he was referred to the institutional optometrist on September 23, 2022, only because he argued with Nurse Holbrook.  (*Id.*)

## II.  ANALYSIS

### A.  Motion to Dismiss—Meade and Trapp

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  A plaintiff must "plausibly suggest an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*.  *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023).  While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to

"conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

1. **First Amendment**

Parks refers to the First Amendment in his complaint, and the court construes his complaint as attempting to bring a First Amendment access to courts claim. Prisoners have a constitutional right to meaningful and effective access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, there is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Ultimately, the right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim," and it "follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* (citing *Lewis*, 518 U.S. at 353). Thus, the complaint must identify (1) the underlying nonfrivolous and arguable legal claim, (2) the remedy sought through that underlying claim, and (3) the loss of the underlying claim resulting from the defendant's alleged interference with his right of access. *Id.* at 415–16; *see also Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library"); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct).

Parks has failed to identify a nonfrivolous and arguable legal claim that was lost due to defendants' alleged interference with his grievance activities. In his complaint and in his response brief (Dkt. No. 42), Parks generically refers to grievances that he filed, but he never identifies the substance of the grievance, much less how the claim should be considered nonfrivolous or how the claim became lost to him such that he is precluded from pursuing the claim in court. Parks attached several grievances and complaints to his complaint (Dkt. No. 1-1), but the court is not obliged to sift through them and ascertain which of them plaintiff is referencing without any guidance from him. To the extent that Parks is referring to his claim of excessive force against defendant Jarrett Slone, that claim is currently pending in this case, so he cannot plausibly allege that he has been denied access to court on that claim. Therefore, without more, Parks has failed to state a plausible access to courts claim.

### 2. Due process

Parks has also attempted to allege a due process claim based on the allegations that Meade and Trapp interfered with his grievance activities. Inmates such as Parks "have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Also, ruling "against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation." *Walker v. Clarke*, Civil Action No. 7:19cv000743, 2020 WL 7378987, at *5 n.7 (W.D. Va. Dec. 15, 2020) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Finally, courts have held that "a prison official's failure to comply with a grievance procedure is not actionable under § 1983." *Baltas v. Clarke*, Civil Action No. 7:20cv00276, 2021 WL 1080516, at *26 (W.D. Va. Mar. 18, 2021).

Thus, Parks has not stated an actionable due process claim, and defendants Meade and Trapp's motion to dismiss will be granted.

**B. Motion for Summary Judgment—Nurse Holbrook**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**C. Deliberate Indifference**

Claims under § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). An official acts with deliberate indifference if she had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). The treatment an inmate receives constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Deliberate

indifference is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

While it does not appear disputed that Parks had a serious medical need for treatment after getting shot in the face, Nurse Holbrook acted promptly in her care and treatment of Parks. Parks was promptly evaluated and admitted to the medical unit for monitoring. He also received an x-ray and was sent to the emergency room for evaluation. Additionally, he was referred to the facility optometrist when he complained of blurry vision and light sensitivity; Parks then continued to follow-up with two specialists, and Nurse Holbrook followed all recommendations. Thus, it cannot be said that Nurse Holbrook knew of but disregarded Parks's serious medical condition, and Parks has offered no evidence to contradict the straightforward medical records in this case.

Parks's only issue seems to be minimal delays—that he did not receive an x-ray until two days after the shooting and did not see the prison optometrist until another three days after that. There is no evidence, however, that the treatment provided at the time was inadequate or that Nurse Holbrook perceived or should have perceived a need for escalating treatment until she did so. The provision of prompt care to Parks certainly does not support the claim that Nurse Holbrook acted with gross incompetence. In other words, it was not unreasonable for Nurse Holbrook to not immediately order an x-ray or order a visit with an optometrist when the necessity was not immediately apparent. Thus, while it is true that a "significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference, *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008), there was no delay in

11

treatment in this case; Parks was given treatment almost immediately after he was injured. Parks merely disputes the treatment decisions made by Nurse Holbrook, which cannot normally be the basis for an Eighth Amendment claim. *See, e.g.*, *Teran v. Cruz*, Civil Action No.: 5:14-cv-4728-RMG, 2016 WL 155051, at *2 (D.S.C. Jan. 13, 2016) (explaining that "delay alone does not automatically trigger deliberate indifference," and that while plaintiff "may have desired a different course of treatment or an earlier surgery date, his desires do not transform a non-emergency surgery that actually takes place into deliberate indifference") (citing *King v. United States*, 536 F. App'x 358, 362 (4th Cir. 2013)). And, finally, Parks has not shown that his injury was exacerbated by any brief delay.

For these reasons, Nurse Holbrook is entitled to summary judgment.

### III.  CONCLUSION

The court will issue an appropriate order granting defendants Meade and Trapp's motion to dismiss and Nurse Holbrook's motion for summary judgment.

Entered: September 9, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge